IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARIUS B.,[1] ) | |
| ) | |
|     Plaintiff, ) | |
| ) | No. 23 C 3699 |
| v. ) | |
| ) | Magistrate Judge |
| MARTIN J. O'MALLEY, ) | Maria Valdez |
| Commissioner of Social Security, ) | |
| ) | |
|     Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Darius B.'s claim for Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to remand the Commissioner's decision [Doc. No. 16] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 22] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

## BACKGROUND

### I. PROCEDURAL HISTORY

On November 28, 2016, Plaintiff filed a claim for SSI, alleging disability since August 27, 2016. Four hearings were held before two Administrative Law Judges (ALJs), each time leading to denials of Plaintiff's application and each time leading to subsequent remands by the Social Security Administration Appeals Council. This led to the subjects of the instant litigation. On November 30, 2022, a fifth hearing before an ALJ was held. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On December 14, 2022, the ALJ again denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Appeals Council then denied Plaintiff's request for review, leaving the ALJ's December 14, 2022 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

In the ALJ's December 14, 2022 decision, Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date of November 28, 2016. At step two, the ALJ concluded that Plaintiff had the following severe impairments: borderline intellectual functioning; learning disorder;

intellectual disability; autism spectrum disorder; asthma; and obesity. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with the following additional limitations: is limited to frequent climbing of ladders, ropes, scaffolds, stairs, ramps, stooping, kneeling, crouching, and crawling; is limited to occasional exposure to unprotected heights and frequent, concentrated exposure to odors, dust, fumes, gases, and other pulmonary irritants, and exposure to extreme cold or extreme heat; can understand, remember, concentrate, persist, and perform simple, routine, repetitive tasks with the ability to follow simple but uninvolved oral written or diagrammed instructions in a low stress environment defined as having few, if any, simple work related decisions and few, if any, routine changes in the work setting, no interaction with the public, occasional superficial interaction with coworkers, but no team tasks; work environment should be free from a fast pace but can involve daily quotas; and can attend to tasks for 2 hours at a time and then would need a 15 minute break, which can be accommodated by routine breaks and lunch. At step four, the ALJ determined that Plaintiff is capable of performing his past relevant work as a dishwasher. Accordingly, the ALJ concluded that Plaintiff is not disabled under the Social Security Act.

## DISCUSSION

I.  **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

5

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ improperly rejected the opinions of examining psychiatrist Dr. Mark Amdur and psychological consultative examiner Dr. Mark Langgut; and (2) the ALJ erred in ignoring the third-party function report of Plaintiff's mother. Each argument will be addressed below in turn.

#### A. The ALJ's Assessment of the Opinion Evidence

For his first argument, Plaintiff contends that the ALJ did not properly evaluate the opinions of psychiatric examiner Dr. Amdur and psychological consultative examiner Dr. Langgut. Turning to the latter first, the ALJ assessed Dr. Langgut's opinions as follows:

> The opinions of Dr. Langgut are given some weight. Dr. Langgut performed [an] examination in February 2019, and Dr. Langgut opined that the claimant appears able to work productively in a limited work setting, and his modest overall skills in areas of computational ability, judgment, and limited coping skills suggest he requires the support of a responsible payee. Dr. Langgut opined that the claimant would have moderate, marked, and extreme limitations in performing tasks related to complex instructions, but would have no or mild limitations in understanding and remembering simple instructions, carry[ing] out simple instructions, and mak[ing] judgments on simple work-related decisions. Dr. Langgut again examined the claimant in July 2022, when he opined that the claimant would have marked limitations in performing tasks related to complex instructions, but would have only mild limitations in understanding and remembering simple instructions, carry[ing] out simple instructions, and mak[ing] judgments on simple work-related decisions. Dr. Langgut further opined that the claimant has mild limitations in interacting appropriately with the public, supervisors, and co-workers, and moderate limitations in responding appropriately to unusual work situations and changes in a routine work setting. These opinions are given some weight as they are generally consistent with the overall record. These limitations have been incorporated in the residual functional capacity assessment above.

(R. 27-28 (citations omitted).)

So, the ALJ incorporated the specific limitations opined by Dr. Langgut into the RFC. However, in attacking the ALJ's treatment of Dr. Langgut's opinions, Plaintiff maintains that "the ALJ omitted certain limitations assessed by Dr. Langgut." (Pl.'s Memo. at 8.) In particular, Plaintiff contends that the ALJ erroneously "relied entirely upon the check-box forms and failed to address the opinions included within [Dr. Langgut's] narrative reports." (*Id.*) According to Plaintiff, "the ALJ's mental RFC does not contemplate Dr. Langgut's narrative limitations." (*Id.* at 9.) The Court rejects Plaintiff's arguments in that regard. As an initial matter, "nothing requires the ALJ to adopt each and every limitation opined by a physician, even when she finds the opinion persuasive." *Jack A. v. Kijakazi*, No. 20 C 3446, 2021 WL 5882145, at *3 (N.D. Ill. Dec. 13, 2021). Furthermore, as Defendant points out, no sections of Dr. Langgut's "narrative" reports were styled as opinions about Plaintiff's specific work-related limitations. As such, the problem for Plaintiff is that he does not explain how the narrative statements he cites connote any further specific limitations beyond those that the ALJ assessed. Moreover, as the Seventh Circuit has observed, "there is only so much specificity possible in crafting an RFC." *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020). Here, Plaintiff has not articulated what specific limitations and verbiage the ALJ should have included in the RFC related to the narrative portions of Dr. Langgut's reports. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). And, ultimately, the Court

8

agrees with Defendant that "the ALJ reasonably captured all the specific functional limitations that Dr. Langgut opined." (Def.'s Memo. at 1.)

Plaintiff also attacks the ALJ's evaluation of the opinions of psychiatric examiner Dr. Amdur. The ALJ assessed Dr. Amdur's opinions as follows:

> Dr. Amdur opined that the claimant's capacity to communicate efficiently and meaningfully is poor, he would have difficulty relating effectively with coworkers and supervisors, he would have difficulty comprehending and following written instructions, and deficits in executive functioning means he would require persistent supervision and direction. He also noted that the examination performed by Dr. Michael Stone, Ph.D. suggests that he would be vulnerable to experience affective problems and would be unable to tolerate work stresses because of affective instability and would not be capable of managing funds independently if awarded benefits due to poor judgment. These findings are given no weight because they are inconsistent with the overall record, findings on examination, the claimant's own reported activities, and the consultative examiner's own findings. As discussed above, claimant has received little treatment for any mental impairments. When he received treatment for asthma, psychiatric findings were consistently normal. He presented for behavioral health twice, when examination findings were generally normal. He reported that he needed help with paperwork but did not believe he needed ongoing counseling or have any mental health concerns. In addition to the treatment records, he is able to work part-time, able to go to school, can concentrate on television, play video games, draw for hours, and he can take public transportation alone. He was able to learn how to use a tablet and post online, and he was able to complete drawing classes in College and earn C's. Therefore, while the undersigned has considered the examination findings of these examinations, the opinions based on one-time examination and limited review of the record are given no weight.

(R. 27 (citations omitted).)

Pursuant to the law applicable to Plaintiff's disability claim (filed in 2016), the ALJ here was entitled to "reject medical opinions, be they from treating, examining, or reviewing doctors, as long as she provides good reasons for doing so." *Andrews v. Colvin*, No. 15 C 7192, 2016 WL 4905671, at *6 (N.D. Ill. Sept. 15, 2016)

9

(citations omitted); *see also Shannon M. v. Saul*, No. 18 C 7074, 2020 WL 264522, at *9 (N.D. Ill. Jan. 17, 2020) ("Of course, it is indisputable that the ALJ does not have to accord weight even to an examining doctor's opinion, as long as the ALJ provides good reasons for not doing so.") (citations omitted). Per the passage quoted above, the ALJ rejected Dr. Amdur's opinions because, *inter alia*, they were inconsistent with psychiatric examination findings, inconsistent with the facts that Plaintiff could work-part time and complete college courses, and inconsistent with the record as a whole. Under the circumstances, the Court finds that the ALJ offered sufficiently "good reasons" for affording no weight to Dr. Amdur's opinions. *See Hall v. Astrue*, 489 F. App'x 956, 958 (7th Cir. 2012). The Court declines Plaintiff's invitation to reweigh the evidence in relation to Dr. Amdur's opinions, as that is an endeavor the Court cannot undertake. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### B.     Plaintiff's Mother's Third-Party Function Report

For his second argument, Plaintiff contends that the ALJ erred because she did not set forth an explicit analysis of the third-party function report provided by Plaintiff's mother. In particular, Plaintiff points to his mother's statements that he had difficulties with hygiene, daily tasks, and following instructions. (Pl.'s Memo at 12-13.) According to Plaintiff, his mother's statements are important because they confirm that Plaintiff "needs persistent supervision." (*Id.* at 13.) The Court finds Plaintiff's arguments concerning his mother's report unavailing.

An ALJ does not necessarily err by not explicitly addressing third-party reports if the statements are merely corroborative or duplicative of a plaintiff's claims and the ALJ does not overlook the lines of evidence that they represent. *See Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *14 (N.D. Ill. Dec. 19, 2019) (finding ALJ's failure to properly evaluate claimant's sister's function report harmless where third-party report was largely cumulative and duplicative of other evidence); *Christopher H. v. O'Malley*, No. 21 C 4089, 2024 WL 488204, at *4 (N.D. Ill. Jan. 30, 2024) (finding ALJ did not err by not discussing claimant's wife's third-party function report where wife's report dealt with duplicative symptoms and limitations); *Noble v. Colvin*, 942 F. Supp. 2d 799, 814 (N.D. Ill. 2013) (rejecting claimant's argument that ALJ erred in failing to consider wife's testimony noting that it is "well settled that an ALJ's 'adequate discussion' of the issues need not contain a complete written evaluation of every piece of evidence") (citations and internal quotations omitted). Here, the statements by Plaintiff's mother were largely duplicative of Plaintiff's own statements and other evidence in the record about his limitations. For instance, with respect to Plaintiff's hygiene, the ALJ observed that Plaintiff's "treating and examining providers indicate the claimant has adequate hygiene and grooming for appointments." (R. 19.) Furthermore, per the Court's analysis set forth above, the ALJ considered and reasonably rejected evidence suggesting that Plaintiff would require persistent supervision and could not effectively follow instructions. Under the circumstances, the Court agrees with Defendant that the ALJ did not overlook any lines of evidence raised by Plaintiff's

11

mother's statements and committed no error in omitting further discussion of her third-party function report. Importantly, Plaintiff has not shown that anything in his mother's report would change the ALJ's conclusion that Plaintiff had the ability to handle simple work and could perform a job as a dishwasher. *See Vernia v. Berryhill*, No. 16 C 50364, 2018 WL 353336, at *5 (N.D. Ill. July 23, 2018) (finding no error where claimant had not shown that statements from her father would have been sufficient to change the ALJ's decision). Accordingly, the Court rejects Plaintiff's second argument.

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to remand the Commissioner's decision [Doc. No. 16] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 22] is granted.

**SO ORDERED.**            **ENTERED:**

**DATE:**    **March 21, 2024**

                                              **HON. MARIA VALDEZ**
                                              **United States Magistrate Judge**